## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**LULA H.,**[1]

     **Plaintiff,**

**v.**                                          **Civil Action No. 2:22cv407**

**KILOLO KIJAKAZI,**
*Acting Commissioner of*
*Social Security,*

     **Defendant.**

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff Lula H. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") under the Social Security Act ("the Act"). Specifically, Plaintiff argues that the Commissioner's Administrative Law Judge ("ALJ") improperly evaluated medical opinion evidence from Plaintiff's primary care physician. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes the ALJ adequately considered the medical opinion evidence in the record, and therefore recommends that the court deny Plaintiff's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB under Title II of the Act on May 28, 2020. (R. 238). She alleged disability beginning March 6, 2020, based on diabetes, high blood pressure, high cholesterol, low vitamin D, left eye glaucoma, backpain, and anxiety. Id.; (R. 149). The state agency denied her application initially and on reconsideration. (R. 148-54, 158-70). Plaintiff then requested an administrative hearing. (R. 37-38). The hearing was held initially on August 13, 2021, and reconvened on November 19, 2021. (R. 93-109, 111-147). Plaintiff was represented at the hearing, and an impartial vocational expert ("VE") testified. Id. On January 10, 2022, the ALJ denied Plaintiff's claim for DIB, finding she was not disabled during the period alleged. (R. 11-30). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19-21). The ALJ also found that Plaintiff's RFC permitted her to perform work within the national economy. (R. 21-30). On July 28, 2022, the Appeals Council denied Plaintiff's request for review. (R. 1-4).

On September 30, 2022, Plaintiff timely filed her complaint in this court. Compl. (ECF No. 1). She seeks judicial review of the Commissioner's final decision that she was not disabled, claiming that "[t]he agency committed error of law by denying Appeals Council review" and that "[t]he conclusions and findings of fact of the [Commissioner] are not supported by substantial evidence and are contrary to law and regulation." Id. at ¶¶ 4, 8. On February 13, 2023, Plaintiff moved for summary judgment. (ECF No. 16).

Plaintiff argues that the case should be reversed or remanded because the ALJ "failed to properly evaluate the opinion evidence" from Plaintiff's primary care physician, Michael Tucker, M.D. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 17, at 5-11). On March 15, 2023,

the Commissioner filed a Cross Motion for Summary Judgment and opposed Plaintiff's motion.[2]
(ECF No. 19).  The Commissioner argues that the ALJ properly evaluated the opinion evidence
and was "reasonably unpersuaded by Dr. Tucker's medical opinions."  Def.'s Mem. Supp. Cross
Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 20, at 16).  After a review of the record, this Report
considers each of these arguments.

## II.   FACTUAL BACKGROUND

Plaintiff was born on August 15, 1956, and at the time of the alleged onset she was 63 years
old.  (R. 238).  She met the insured status requirements under the Act until September 30, 2022.
(R. 17).  She has not engaged in substantial gainful activity since March 6, 2020, the alleged onset
date, although she was working part-time four hours per day at the time of the hearing.  Id.  She
completed both a bachelor's and master's degree in criminal justice and reported past work as an
administrative assistant and registration clerk.  (R. 121, 126, 138, 309).

### A.   Plaintiff's Health Treatment

Plaintiff's arguments in this court do not require a complete review of her medical history,
as she disputes only the ALJ's assessment of Dr. Tucker's opinion evidence.  The treatment
Plaintiff received, as relevant to the pending motion, is outlined below.

Plaintiff claimed disability to due diabetes, high blood pressure, glaucoma, back pain, and
anxiety.  (R. 149, 238).  During the hearing, she attributed her inability to maintain fulltime
employment to her vision issues and difficulty sleeping.  (R. 121, 123-24).  She also complained
of pain in her finger, which had improved with steroid injections.  (R. 131).

---

[2] Under the new Supplemental Rules for Social Security Actions, effective December 1, 2022, appeals from
final decisions of the Social Security Administration are presented for decision by the parties' briefs.  Supp.
R. Soc. Security Actions Under 42 U.S.C. § 405(g), Rule 5.  In this case both parties relied on the court's
prior process of filing cross motions for summary judgment.  For convenience, this Report recommends a
disposition consistent with the parties' procedural practice.

With respect to these conditions, Plaintiff primarily treated with her primary care physician, Michael Tucker, M.D., and others on his staff. (R. 460). Dr. Tucker is certified in family medicine and geriatrics. Id.

At an appointment February 25, 2020, Dr. Tucker noted Plaintiff was there to follow-up on her care for diabetes and obtain more test strips. (R. 525). She complained of pain in her legs and feet and weakness walking up and down stairs. Id. Her exam revealed no swelling and positive pulses in her extremities. Dr. Tucker observed that she was not taking her medication as directed. Id. She was directed to be more compliant with her medications, diet, and exercise, and return in six months for a follow-up. Id.

Plaintiff returned to Dr. Tucker August 7, 2020. (R. 524). On that date she complained of frequent urination. Id. Her exam was essentially normal, and Dr. Tucker ordered lab work and again counseled her to take her medication regularly, watch her diet, and increase her exercise. Id. He again directed a follow-up appointment in six months. Id.

At Plaintiff's follow-up visit February 5, 2021, her exam was nearly identical to previous visits with no swelling and positive pulse on her extremities. (R. 628). Dr. Tucker reviewed her present diagnoses which included diabetes mellitus, hypertension, and diabetic neuropathy. Id. He again stressed diet and directed a return visit in six months. Id.

On May 26, 2021, Plaintiff returned complaining that she could not sleep and had a knot on her foot which affected her ability to stand for long periods. Id. Dr. Tucker directed a sleep study and follow-up care for her foot, ordering that she return following these consultations. Id. In June 2021, Plaintiff was examined at the Norfolk Foot & Ankle Specialists by Doctor of Podiatric Medicine (DPM) Wynta Williams. (R. 690). Her exam that day again revealed no swelling or varicosities in her feet or ankles. Id. Her pedal hair was within normal limits and her

4

legs were warm to her bilateral lower extremities. Id. Light touch sensation was intact in both her left and right foot with no Tinel sign, and intact symmetrical reflexes on both her right and left foot. Id. Dr. Williams observed normal muscle tone in Plaintiff's foot and ankle and 5/5 strength. Id. With respect to her complaint of a nodule, the exam revealed a firm nodule near the first metatarsal cuneiform joint—non-movable. Id. But there was no pain or crepitation with range of motion. (R. 691). Her foot was not hypermobile but there did appear to be "excess pronation of the foot with ambulation." Id. Relevant diagnoses included exostosis[3] of the foot and primary osteoarthritis of the left ankle and foot. Id. She was prescribed Voltaren pain relief gel and discussed various surgical and nonsurgical treatment options. Id. She was directed to follow-up in four weeks. Id.

On July 28, 2021, Plaintiff consulted with a sleep specialist for concerns regarding sleep apnea. (R. 745). She was seen that day by Nurse Practitioner Patricia Hannah. (R. 743-46). The office recorded complaints of worsening loud snoring, fatigue, insomnia, and nocturnal awakenings. (R. 743). She stated she took naps two times a week lasting approximately 20 minutes each, went to bed each evening at 10:00 or 9:00 on the weekends, falling asleep within one to two hours. Id. She denied headaches, dry mouth, enuresis, or grinding of teeth, but complained of occasional tossing and turning, and rare leg cramps or twitches. Id. The office recommended a sleep study but it is not clear any was completed. (R. 745). Her exam that day was essentially normal, with her mental status described as alert and oriented times 4 with normal speech and insight. Id. Her motor tone and strength were described as intact in all four extremities

---

[3] Exostosis is a "benign bony growth projecting outward from the surface of a bone." *Exostosis*, Dorland's Illustrated Medical Dictionary, (31st ed. 2007).

with a normal gait and normal affect in judgment. Id. The office discussed options for treatment of sleep apnea and directed a follow-up after the sleep study. Id.

With regard to her mental health, Plaintiff consulted regularly with Professional Counselor Angela Montgomery at Hope Counseling and Psychotherapy. (R. 854-55). LPC Montgomery met with her seven times between July 2020 and June 3, 2021. Id. At these visits she reported practicing self-care, including walking and practicing yoga. Id. Her mood was occasionally described as "frustrated" with "moderate anxiety." Id. But at times she presented with "a great attitude." (R. 854). On December 5, 2020, she reported starting a new job but still had mild anxiety and was looking for a new place to live. Id. She reported that her "overall health is good," LPC Montgomery provided encouragement and support, and discussed the importance of self-care. (R. 855). On February 22, 2021, she reported "irritation with family members" and "high stress." She requested anxiety medication from her primary care physician. Id. On May 29, 2021, she reported "some anxiety and depressive symptoms," but was "reaching out to family for support." Id. LPC Montgomery discussed the importance of prayer, church, and exercise, as well as meeting with her medical doctor as needed. Id.

With respect to her vision issues, Plaintiff consulted regularly with Virginia Eye Consultants. (R. 836-41). During a visit August 26, 2021, Plaintiff's diabetes was noted "without complications," and "no macular edema." (R. 837). She was prescribed eyedrops for dry eye syndrome and "early cataracts," which were "not usually significant." Id. With regard to her left eye glaucoma, testing that day revealed left eye glaucoma—"mild stage"—for which she was prescribed eye drops. (R. 838). She was cautioned to use her medicines regularly to guard against future damage but continued on her existing treatment. Id.

**B.      Opinion Evidence**

**1.      State Agency Consultative Examiners**

**a.      Eugene Noland, M.D.**

On July 31, 2020, when Plaintiff's claim for DIB was pending at the initial level, state agency physician Eugene Noland, M.D. conducted a review of Plaintiff's medical records. (R. 151-52). Dr. Noland opined that Plaintiff had no severe impairments. (R. 152). He noted her diabetes and hypertension were managed with medication. Id. There was no treatment for, or diagnoses of back problems though Plaintiff sometimes complained of back pain. Id. Her glaucoma was described as mild. Id.

**b.      Eric Oritt, Ph.D.**

Likewise, at the initial level Plaintiff's complaint of anxiety were evaluated by Eric Oritt, Ph.D. (R. 152-53). Dr. Oritt found no limitations in any of the paragraph B or C criteria and concluded that any mental health limitation presented by the records was non-severe. Id.

**c.      Robert McGuffin, M.D.**

On November 2, 2020, when Plaintiff's claim for DIB was pending at the reconsideration level, state agency physician Robert McGuffin, M.D., conducted a review of Plaintiff's medical records. (R. 164-65). Dr. McGuffin's findings were identical to those made by Dr. Noland at the initial level. Id. Likewise, he opined that Plaintiff had no severe physical impairment or significant restrictions in physical functioning. (R. 165).

**d.      Nicole Sampson, Ph.D.**

Similarly, during the reconsideration review on November 2, 2020, Plaintiff's mental health complaints were evaluated by Nicole Sampson, Ph.D. (R. 166-67). Dr. Sampson observed that Plaintiff was receiving no mental health treatment and taking no psychiatric medications.

(R. 167).  Her diagnosis of anxiety stemmed from complaints of job stress to her primary care physician, but her mental status exams revealed normal appearance, mood, and affect.  Id.  Dr. Sampson also concluded any mental limitations were non-severe.  Id.

### 2.   Plaintiff's Treating Providers

#### a.   Michael L. Tucker, M.D.

On August 7, 2020, Dr. Tucker completed his first medical evaluation report, which is a checkbox form listing certain questions about Plaintiff's physical work capabilities.[4]  (R. 460-63). In that report, Dr. Tucker described treating Plaintiff since 1997 for diabetes, neuropathy, hypertensive cardiovascular disease, anxiety, and degenerative joint arthritis.  (R. 460-61).  He checked boxes indicating that if working fulltime, Plaintiff would likely be "off task" 20% of each workday and miss up to four days per month due to her impairments.  (R. 460).  He found she could lift and carry 10 pounds occasionally and 20 pounds rarely; sit only two hours and stand and walk one hour in an 8-hour workday.  (R. 461-62).  He imposed numerous postural restrictions, including that she could "never" balance, and only "rarely" stoop, kneel, or crouch, attributing these limits to her neuropathic diabetic pain and arthritis.  (R. 463).

In a second statement attributed to Dr. Tucker and dated February 26, 2021, these limitations were repeated almost verbatim, including the restriction that Plaintiff could never balance.  (R. 579-82).  The form noted, however, that Plaintiff did not need a cane or assistive device.  (R. 580).  The findings were repeated on another check-box form completed June 18, 2021.  (R. 702-05).

---

[4] The medical evaluation report allowed the physician to indicate the level of impairment for each listed activity, with the following checkbox options: never, rarely, occasionally, frequently, continuously.  (R. 579).  The ALJ had difficulty deciphering handwriting in the Medical Source Statements.  (R. 115).  He continued the first hearing to try and get clarification, and eventually attributed all the treating opinion statements in part to Dr. Tucker, concluding that he used a different scrivener to record his opinions.  Id.

A fourth opinion statement completed by LPC Montgomery, and also endorsed by Dr. Tucker, opined on Plaintiff's mental limitations. (R. 583-87). The form described Plaintiff's mental health diagnoses as "Anxiety Disorder Unspecified." (R. 583). The only symptom endorsed by checking appropriate boxes was "Apprehensive Expectation." (R. 584). Nearly all the other available symptoms were marked out, or marked "N/A." Id. But Montgomery checked other boxes suggesting Plaintiff was "markedly limited" in her ability to interact with others, and moderately limited in the ability to concentrate, persist, and maintain pace, as well as adapt or manage herself. (R. 584-87). The statement opined that Plaintiff would be off task 25% of the workday and miss up to four days each month due to her appointments. (R. 587). In a narrative addition to both of these categories, LPC Montgomery wrote "Patient works part time. She reports she would not be able to adequately function in a full-time capacity." Id.

## C.     Testimony Before the ALJ

At the hearing on November 19, 2021, the ALJ heard testimony from Plaintiff and impartial VE, Christina Beatty-Cody. (R. 111-47).

### 1.     Plaintiff's Testimony

On direct questioning by the ALJ, Plaintiff testified that she is single and lives alone in an apartment building with an elevator. (R. 119). She earned a master's and bachelor's degree in criminal justice and tested to become a private investigator, but has not worked in this field. (R. 120). She testified that she worked four hours per day doing customer service work by phone. (R. 95-96). But working longer would be difficult due to vision problems, right-handed pain and sleeping issues. (R. 121, 123-24).

Prior to her customer service work she worked as a secretary and registration clerk. (R. 126-27). She testified that her current position primarily involves sitting at a desk and answering the phone. (R. 122-24). She usually sits for two hours at a time and does not have any issues doing that. (R. 124). She described her vision problems worsening, but stated eyedrops helped and she could still drive. (R. 130-31). She also reported relief from finger pain with injections. (R. 131-32). She had a cane which she used occasionally during exercise, but it was not prescribed. (R. 133). She testified to no difficulties taking care of her apartment, including dusting and vacuuming, but stated she needed help with heavy groceries. (R. 134).

## 2. Testimony from VE Christina Beatty-Cody

Christina Beatty-Cody is an impartial VE. (R. 139-40). The VE first classified Plaintiff's prior employment as that of a secretary, typically performed at the sedentary level, but performed by Plaintiff at light exertion. (R. 140). At the hearing, the ALJ's hypothetical posited a person with the same age, education, and work experience as Plaintiff who was capable of "light work" with the following limitations:

> She could frequently, but not always, climb stairs, stoop, kneel, and crouch. She could only occasionally crawl. She should never climb ladders. She should have no more than frequent exposure to vibration. She could frequently, but not always, handle objects such as the gross manipulation with the left or right hand.

(R. 140-41). The VE testified that a similarly limited person could perform both of Plaintiff's previous jobs. (R. 141).

The ALJ then asked if there were other semi-skilled or skilled jobs in the national economy which the hypothetical person could perform that would require no more than very little, if any, vocational adjustment. (R. 142). The VE identified reception clerk (DOT 237.367-010), with 219,000 jobs in the national economy. Id. She also described skills acquired from her past relevant work as a secretary, and in a composite job comprised of secretary/registration clerk. (R. 142-43).

These would include scheduling appointments, recording dates and times of appointments, transferring calls, and receiving callers and messages. (R. 143). Finally, the VE confirmed that more than two unscheduled absences per month, or being off task more than 15% of each day would preclude all work. (R. 144).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's

11

determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

Plaintiff's brief identifies one error in the ALJ's decision that she claims warrant remand. She argues that the ALJ failed to properly evaluate the opinion evidence from Dr. Michael Tucker, Plaintiff's treating physician. Pl.'s Mem. (ECF No. 17, at 6–11). The Commissioner argues that the ALJ was "reasonably unpersuaded" by Dr. Tucker's opinion evidence. Def.'s Br. (ECF No. 20, at 16). As explained below, this Report finds that the ALJ adequately evaluated the medical opinion evidence in the record. Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

## A.   Framework for SSA Disability Evaluation

A person may file for and receive disability insurance benefits under the Social Security Act if she or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in her or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4).  Specifically, the regulations direct the ALJ to answer the following five questions:

1.   Is the individual involved in substantial gainful activity?

2.   Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits her or her physical or mental ability to do basic work activities?

3.   Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.   Does the individual's impairment or combination of impairments prevent her or her from performing any relevant past work?

5.   Does the individual's impairment or combination of impairments prevent her or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled.  An affirmative answer to questions three or five establishes disability.  The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy.  See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(3); 404.1520b.  This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age."  Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)).  Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ.  Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.      The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date.  (R. 19-20).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus with neuropathy; bilateral foot osteoarthritis; pes planus deformity[5]; and obesity.  (R. 17).  At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments.  (R. 19-21).  The ALJ then developed a finding regarding Plaintiff's RFC.  (R. 21).  He determined Plaintiff was able to perform light work, as defined in 20 C.F.R. § 404.1567(b), with following limitations:

> the claimant can frequently, but not always, climb stairs, stoop, kneel, and crouch; the claimant can only occasionally crawl; the claimant should never climb ladders; the claimant should have no more than frequent exposure to vibration; the claimant can frequently, but not always, handle objects, that is the gross manipulation, with the left or right hand; and the claimant is limited to standing or walking only four hours total in an eight hour work day.

Id.  At step four, the ALJ concluded that Plaintiff could perform her past relevant work.  (R. 27). At step five, the ALJ made an alternative finding, identifying additional work in the national economy Plaintiff could perform, and therefore found that she was not disabled.  (R. 28-29).

**C.      The ALJ's Evaluation of the Opinion Evidence in the Record Complies with the Controlling Regulations and is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred by improperly evaluating the medical opinions offered by Dr. Tucker and LPC Montgomery.  Pl.'s Mem. (ECF No. 17, at 6-11.)  The Commissioner argues that the ALJ's evaluation of the opinion evidence in the record is proper and supported by

---

[5] Pes planus is the medical term for flat feet, a common, usually benign condition where the arch of the foot contacts the ground while standing.  It can sometimes cause foot pain.  en.wikipedia.org/wiki/flat_feet. (last visited September 5, 2023).

substantial evidence.  Def.'s Br. (ECF No. 19, at 22-27).  Because the ALJ's evaluation of all the opinion evidence was appropriate and consistent with SSA regulations, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

      1.      **The ALJ properly evaluated the medical opinions from Dr. Tucker and/or LPC Montgomery.**

The record includes a total of four opinion statements signed by Dr. Tucker.  (R. 463, 583-85, 587, 705).  Three of these contain virtually identical physical limitations recorded on three different dates between August 2020 and June 2021.  A fourth statement, prepared by LPC Montgomery and endorsed by Dr. Tucker, relates to Plaintiff's mental limitations.  (R. 583-85).

Under the applicable regulations,[6] the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, she or he must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2).  Supportability evaluates whether a medical source supports her or her opinion with "objective medical evidence and supporting explanations," § 404.1520c(c)(1), while consistency evaluates whether "evidence from other medical sources and nonmedical sources" also support the source's opinion, § 404.1520c(c)(2).

When evaluating a medical opinion under these rules, the ALJ cannot "cherrypick[] facts that support a finding of nondisability while ignoring evidence that points to a disability finding."

---

[6] On January 18, 2017, the SSA modified new rules for considering medical opinions and prior administrative medical findings.  20 C.F.R. § 404.1520c.  The new rules apply to all claims filed after March 27, 2017.  Id.  Because Plaintiff filed her claims in 2020, (R. 238), these rules apply.

Bilotta v. Saul, 850 F. App'x 162, 169 (4th Cir. 2021) (quoting Lewis, 858 F.3d at 869); see also

Apr. R.D. v. Saul, No. 2:20-cv-210, 2021 WL 3260072, at *9 (E.D. Va. June 29, 2021)

(recommending remand because the ALJ "selectively cherry-picked unrepresentative evidence"),

R. & R. adopted by 2021 WL 3215093 (E.D. Va. July 29, 2021). Cherry-picking occurs when an

ALJ focuses on "a single treatment note that purportedly undermines [the source's] overall

assessment of [the plaintiff's] functional limitations . . . ." Hudson v. Colvin, No. 12-cv-269, 2013

WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th

Cir. 2011)).

      Here, when explaining his RFC determination, the ALJ first stated that he "considered the

medical opinion(s) and prior administrative medical finding(s) in accordance with the

requirements of 20 CFR § 404.1520c." (R. 21). Assessing Dr. Tucker's opinions of Plaintiff's

physical limitations specifically, the ALJ found his opinions to be "not persuasive." (R. 25). The

ALJ reasoned that the evidence in the record did not support the severe limitations Dr. Tucker

assessed.

> Overall, Dr. Tucker's TSS (physical) in Exhibits 5F and 12F is very
> limiting, and it is inconsistent with the progress notes from
> August 7, 2020 (Exhibits 7F, 13F, and 31F). Nothing observed
> supports the severity of the limitations in Dr. Tucker's TSS
> (physical) in Exhibits 5F and 12F, and accepting the limitations in
> Dr. Tucker's TSS (physical) in Exhibits 5F and 12F were observed,
> I would expect that to be noted and a follow up ordered (no
> balancing, and rare stooping, crouching, and crawling).
> Furthermore, one month later on September 23, 2020, there was a
> PE that was not remarkable (Exhibits 9F and 21F).

(R. 25) (emphasis added). Plaintiff argues the ALJ's assessment did not "meaningfully discuss"

the most important factors of supportability and consistency. Pl.'s Mem. (ECF No. 17, at 10).

Instead, in Plaintiff's view, the ALJ "focused on discrediting the authenticity of the opinions based

on the ALJ's own informal handwriting analysis." Id. He contends that the ALJ's explanation

failed to consider probative evidence. Id. In support of that position, Plaintiff points to Plaintiff's treatment records documenting Plaintiff's trigger finger pain and treatment at the Hand Center. Id. at 10-11.

On the other hand, the Commissioner argues that the ALJ's rationale adequately addressed the supportability factors. Def.'s Br. (ECF No. 20, at 13–16). The Commissioner points to the ALJ's discussion of Dr. Tucker's treatment records between 2020 and 2021, including detailed examination findings from her consultation with DPM Williams at Norfolk Foot and Ankle Specialists. Id. at 14. The Commissioner also notes that the ALJ expressly discussed the extent of Plaintiff's daily activities, including working, regular yoga practice, preparing meals, handling laundry, shopping, driving, and visiting family. Id. at 15. In short, in the Commissioner's view, the ALJ's decision discussed the record evidence at substantial length before concluding that the evidence supported his RFC assessment.

The Commissioner's description of the analysis is correct. The ALJ cited to the exact medical records corresponding to the physical assessment, noting that it was inconsistent with the cited progress note from August 7, 2020, which recorded no unusual physical findings, counseled Plaintiff to maintain a strict diet, and return in 6 months. (R. 25, 524). The ALJ also specifically referenced an unremarkable physical exam on September 23, 2020. (R. 25) (citing R. 566). On that day, Plaintiff reported no muscle aches, no weakness, no joint pain, no back pain, and no sleep disturbances or depression. (R. 566).

Plaintiff does not address these plainly inconsistent medical records, instead faulting the ALJ for expressing concern over who signed or prepared the opinion evidence. Pl.'s Mem. (ECF No. 17, at 10) (noting the ALJ described different handwriting on the submissions as "very dubious"). In fact, Dr. Tucker's handwriting is nearly impossible to read, and the ALJ went to

great lengths to assess how the medical records—both from his office and his opinion statements—supported his limitations. He did not discredit Dr. Tucker's opinions because they were transcribed or prepared by others—rather he found several specific instances in the legible record that plainly contradicted his severe limitations. The ALJ also observed that the physical opinion reports were "internally inconsistent," because they limited Plaintiff to never balancing, but noted that she would not need a cane, or assistive device to ambulate and was capable of standing and walking up to an hour in an 8-hour workday. (R. 25) (citing R. 462-63). Plaintiff does not address this portion of the ALJ's opinion, but it likewise supports the conclusion that the limitations were not persuasive.

The ALJ began his discussion of the mental health limitations in the joint opinion prepared by LPC Montgomery and endorsed by Dr. Tucker, by noting that it was neither supported by, nor consistent with the evidence of record as a whole. (R. 26). The ALJ then explained the limitations found in the opinion and his reasons for finding it "not persuasive,":

> Dr. Tucker's TSS (psychological) in Exhibit 11F is based on the treatment notes from May 29, 2021 (Exhibit 31F). However, Exhibit 11F is a mental health MSS, and Dr. Tucker is not a mental health care professional. Furthermore, each line says, "patient reports" (Exhibit 11F). As stated earlier, the claimant's medically determinable mental impairment of anxiety (Exhibit 25F) does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and is therefore non-severe. The claimant has not had any psychiatric hospitalizations or emergency room (ER) visits for her anxiety (Exhibits 1F-31F). In addition, the claimant has only received limited and conservative treatment, including medications, for her anxiety by her PCP (Exhibit 25F). Furthermore, the psychiatric portion of the PE from September 23, 2020, revealed the following: the claimant was oriented to time, place, and person; she had normal mood and affect; and she was active and alert (Exhibit 21F).

Id. As noted, the ALJ addressed the supportability and consistency of the opinion as required by 20 C.F.R. § 404.1520c(b)(2). The ALJ observed that Plaintiff's medical record contained no

evidence of E.R. visits or hospitalizations and that her care was limited and conservative.  (R. 26).

He again cited a normal mental status exam from September 23, 2020.  (R. 18) (citing R. 717).  On

that date she reported no depression or sleep disturbance.  (R. 717).  Her mental status exam

revealed a normal mood, and she was described as active and alert.  Id.  Elsewhere in the opinion

the ALJ described Plaintiff's extensive activities of daily living, noting that she lived alone,

cleaned, did laundry, walked, and did yoga for exercise, drove, used a computer, and visited family.

(R. 22) (citing R. 854).  These self-reports were not gleaned from an overwhelmingly contrary

record as Plaintiff's brief implies—they were enumerated in the notes prepared by LPC

Montgomery summarizing her periodic therapy visits.  (R. 854-55).  In other words, they were

records of the same provider whose opinion was under scrutiny.  As a result, they provide strong

support for the ALJ's conclusion that the joint opinion on medical limitations was not supported

by other evidence in the record and therefore unpersuasive.

The ALJ's overall analysis of the opinion evidence also included a detailed review of the

opinions of Agency consultants.  (R. 24-25).  He found the consultant's opinions "fairly

persuasive," but ultimately imposed higher restrictions than the consultants—who had concluded

Plaintiff had no severe impairments.  (R. 24).  In doing so, the ALJ observed that Plaintiff's

diabetes was controlled with medications and no complications.  (R. 24) (citing Ex. 9F, 21F, 24F,

and 25F).  He also cited her activities of daily living as "extensive," including regular yoga and

daily part-time work.  (R. 25) (citing R. 324-31, and Pl.'s Hearing).

The ALJ was entitled to discount Dr. Tucker' opinions in the face of conflicting evidence

in the medical record and these contrary opinions from state agency consultants.  State agency

consultants are highly qualified experts in disability evaluation whose opinions are entitled to

consideration by the ALJ.  20 C.F.R. § 404.1513a(b)(1).  Here, the ALJ found the state consultants'

opinions "fairly persuasive" and relied on them to conclude Plaintiff could perform "less than the full range of light work." (R. 24-25). An ALJ is entitled to credit the opinions of non-treating physicians that are consistent with the entire record over opinions from treating physicians that are not. See 20 C.F.R. § 404.1513a(b)(1) (requiring ALJs to consider, but not necessarily adopt, prior administrative medical findings); see also Bewley v. Berryhill, No. 2:17cv643, 2018 WL 7017995, at *7-8 (E.D. Va. Sept. 24, 2018) (affirming ALJ opinion that credited state agency consultant's opinion over treating physician's opinion in light of the latter's inconsistency with the record evidence), R. & R. adopted by, 2018 WL 6323072 (E.D. Va. Dec. 4, 2018). The most significant change in the regulatory framework adopted in 2017 is that medical opinions from treating sources no longer carry controlling weight. See 20 C.F.R. § 404.1520c(a). The ALJ instead considers the "persuasiveness" of all the opinion evidence, 20 C.F.R. § 404.1520c(a), and is only required to explain the most important factors of "supportability" and "consistency," id., § 404.1520c(b)(2). The ALJ is not required to make detailed findings on evidence she finds neither valuable nor persuasive. Id. And the reasons given for concluding a medical opinion is only somewhat persuasive need not be "elaborate or even sophisticated, but rather … simply clear enough to enable judicial review." T-Mobile South, LLC v. City of Roswell, GA, 135 S. Ct. 808, 815 (2015).

Plaintiff points to a few other pieces of evidence in the medical record that are supportive of and consistent with the conclusions in Dr. Tucker's opinion, arguing that the ALJ cherry-picked the record for favorable evidence. Pl.'s Mem. (ECF No. 17, at 8). Specifically, she relies on treatment Plaintiff received at The Hand Center for pain in her trigger finger, which was not specifically cited in the ALJ's assessment of Dr. Tucker's physical limitations. Id. However, the facts the ALJ used to discount Dr. Tucker's medical opinion were representative of the record as a whole. See Arakas v. Comm'r, SSA, 983 F.3d 83, 99, 102 (4th Cir. 2020) (finding that the ALJ

errs when misstating or mischaracterizing facts).  The ALJ thoroughly detailed the medical record

in support of his RFC, highlighting numerous pieces of evidence contradicting and supporting the

conclusions in Dr. Tucker's opinion.  Although he did not reference the finger pain in that section

of the opinion, he did note that she received a steroid injection in October 2021.  (R. 23) (citing R.

809).  Plaintiff also testified before the ALJ that the injection helped her finger pain.  (R. 131-32).

Moreover, Dr. Tucker's medical source statements contained no limitations related solely to

Plaintiff's finger pain.  (R. 615) (limiting Plaintiff to "occasional" fingering, and handling, the

same limits imposed on her use of foot controls and attributing both to neuropathic pain and

arthritis).  (R. 131).  An "ALJ need only review medical evidence once in [his] decision,"

McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002), and what matters is not where the

review occurs, or what particular words are used, but whether a reviewing court can "reasonably

… discern[]," Garland v. Ming Dai, 141 S. Ct. 1669, 1679 (2021), how the ALJ arrived at the

decision.  As such, the ALJ did not cherry-pick the record, and his conclusions regarding the

supportability, consistency, and overall persuasiveness of Dr. Tucker's opinions are supported by

substantial evidence.

Additionally, remand is not warranted simply because the record contains evidence which

could support a conclusion opposite from the one reached by the ALJ.  The court must defer to the

ALJ's findings if those findings are supported by substantial evidence.  Perales, 402 U.S. at 390;

see also Lewis, 858 F.3d at 865.  This appeal is not an opportunity to relitigate the case.  If

"conflicting evidence allows reasonable minds to differ as to whether [Plaintiff] is disabled," then

the court defers to the ALJ.  Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640

(7th Cir. 1987)).  Because the ALJ's opinion here is supported by substantial evidence, the court

does not consider whether the evidence might also support an alternative finding.  Thus, there was

no error in the ALJ's evaluation of Dr. Tucker's opinions and his decision to find the opinions "not persuasive," and rely instead on the opinion evidence from agency consultants is supported by substantial evidence.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 16), GRANT Defendant's Cross Motion for Summary Judgment, (ECF No. 19) and AFFIRM the final decision of the Commissioner.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 14, 2023